ARCHIBALD CARR, Respondent, v. MARTIN BURKE *et al.*, Appellants.

*Boats and Vessels—Power of Master.*—The master of a boat in the home port has no authority as master to give bond and procure security for the discharge of the boat under the 14th section of the act relating to boats and vessels, (R. C. 1855, p. 307,) so as to bind the owners to reimburse the security for such sums as he may be compelled to pay. He is not the agent of the owners for such a purpose, and they will not be liable unless they recognize or ratify his acts in some manner.

*Boats—Power of Master.*—The master of a steamboat may, in the home port, in his capacity of agent, employ persons to serve on the boat, and contract for the necessary stores and supplies.

*Contract — Privity. —* Where a steamboat was attached, in her home port, under the statute for a breach of a contract of affreightment, and the master procured a security to unite with him in giving bond to procure the discharge of the boat, and judgment was rendered against the master and security, the security was compelled to pay the judgment; *Held,* that the security could not recover as for money paid and expended against the enrolled owners, without showing that he became security at their request, or that they ratified the acts of the master, or that there was some privity of contract either in fact or in law.

Bates, Judge, dissenting.

### *Appeal from St. Louis Court of Common Pleas.*

The facts are sufficiently stated in the opinion, excepting that at the trial the defendants offered testimony to prove that Robert A. Reilly was the real owner and manager of the boat, and that he employed the master, the defendants having no management or control of the boat, being trustees only.

The court gave the following instruction at plaintiff's request, defendants excepting:

"Notwithstanding the jury may believe from the evidence, that the steamboat Michigan was at the time of the giving of the bond read in evidence run for the benefit of Robert A. Reilly, yet if they shall also believe that the defendants at the time held the title to said steamboat from Reilly in trust for his benefit, then the defendants are to be taken as the real owners of the boat, and are liable as such."

Defendants asked the following instructions, which were refused, defendants excepting:

" The plaintiff is not entitled to recover in this action, unless he has shown in evidence, to the satisfaction of the jury, that the defendants requested the plaintiff to become security upon the bond mentioned in his petition, and that unless such request is shown in evidence to the satisfaction of the jury, they should find for the defendants.

" If the jury find from the evidence that, at the time the bond read in evidence by the plaintiff was made, the steamboat Michigan was being navigated and run by Robert A. Reilly, and for his benefit exclusively; that said Reilly employed Captain E. A. Sheble to act as captain and master of said boat at the time said bond was made, if said Captain Sheble, while so employed, entered into said bond, and procured the plaintiff to become security on said bond, then the plaintiff cannot recover in this action unless the plaintiff has shown in evidence, to the satisfaction of the jury, that the defendants requested the plaintiff to become security on said bond."

The other instructions were variations of the above.

*F. C. Sharp* and *C. S. Hayden*, for appellants.

I. The instruction asked by plaintiff, at the close of plaintiff's case, should have been given. No *special* authority of the master was shown, and the master as such is not the agent of the owners for the purpose of procuring security on a bond, in the home port, when the owners may be consulted. The master is agent of the owners only, relating to the ordinary employment of the vessel as a vessel. (Abbott on Ship. 134; Parsons on Mar. Law, 380.) He cannot bind the boat for wages, (28 Mo. 347,) nor by bill of exchange, (25 Mo. 99; 10 Metc. 375,) nor procure insurance, (11 Pick. 85; 7 B. Mon. 595,) and many cases hold that in the home port he cannot bind the owners even for supplies. (6 Mees. & W. 380, 381; 37 Maine, 276.)

Carr v. Burke.

II. The only evidence of ownership in defendants was the enrolment, although our statute makes this *prima facie* evidence of ownership; it does not prove nor raise the presumption that the master was the agent of the persons named as owners in the enrolment. The fact of agency must be proved like any other fact. (15 J. R. 298; 4 Pick. 458; 4 Watts & S. 240; 23 Penn. 76; 2 Gill, 393; 33 E. L. & Eq. R. 204; 34 id. 486; 36 id. 380.)

*Hart & McGibbon,* for respondent.

The title appearing by the enrolment to be in the defendants, parol proof was not admissible to show it to be in Reilly, or that they were only trustees for him. There was no proof that the plaintiff knew that defendants held the title in trust for Reilly, and he was not bound to look beyond the legal title in this suit.

The master, Sheble, had authority by the statute to pledge the credit of the owners for the release of the boat. (R. C. 1855, p. 307; Clark v. Humphreys, 25 Mo. 99; Abbott on Ship., 8th ed., 94, 112, and cases referred to; United States v. Johnson, 4 Dal. 412.)

BAY, Judge, delivered the opinion of the court.

In the year 1855, Lucien Carr and Alexander S. Buchanan brought suit in the Court of Common Pleas against the steamboat Michigan upon an alleged contract of affreightment, and caused said boat to be seized under our statute relating to boats and vessels. Sheble, the master of the boat, procured her release, by giving bond as provided by the 14th section of said act, and, at his instance and request, the plaintiff in this suit became security in the bond. Judgment was rendered against Sheble and his security, which was paid by the security upon execution; and this suit was brought against the defendants, as owners of the boat, to recover the amount so paid. Judgment being given against them, they appeal so this court.

Upon the trial of the cause the plaintiff read in evidence a certified copy of the enrolment of the boat in the custom-house at St. Louis, in which the names of defendants appear as owners. Also, the record and proceedings in the case of Carr and Buchanan against the boat, together with the bond upon which she was released. It was also shown that the security paid on the execution, the amount of judgment, interest and costs, making in the aggregate the sum of three hundred and fifty dollars and ninety-seven cents. There was no evidence tending to show that defendants caused plaintiff to become security in the bond, or even knew that the boat had been seized. There was, in fact, no evidence, outside of the enrolment of the boat, connecting the defendants in anywise with the transaction. They did not participate in the defence of the Carr and Buchanan suit. The transaction was managed and controlled exclusively by the master. The liability of the defendants is attempted to be fixed upon the sole fact that they were the owners of the boat, and the court below upon this theory, and assuming this to be the law, gave the instructions asked for by plaintiff, and refused those asked by defendants.

It is not questioned that, as a general rule, the master of a vessel is the agent of the owners, and can by his acts in many respects bind the owners; but his power arising under such agency is largely restricted, and subject to numerous limitations. All contracts made by him for wages of seamen and for supplies, reasonable and necessary, will bind the owners, particularly if made in a foreign port. If the vessel be in a foreign port, the master can bind the owners by many acts which in a home port would be outside of the scope of his authority, and, therefore, imposing no liability upon them.

This distinction is well laid down in the books, and exists from necessity, for it is presumed that in a foreign port the owners cannot exercise that supervision over the vessel which may be necessary for her safety and the success of the voyage. A large latitude is, therefore, given to the power and authority of the master as agent of the owners. Thus, in

Thomas v. Osborne, 19 How., p. 22, the Supreme Court of the United States say that the master of a vessel of the United States, being in a foreign port, has power in case of necessity to hypothecate the vessel, and also to bind himself and the owners personally for repairs and supplies; and he does so without any express hypothecation when, in a case of necessity, he obtains them on the credit of the vessel without

bottomry bond. "The limitations of the authority of the master to cases of necessity, not only of repairs and supplies, but of credit to obtain them, and the requirement that the lender or furnisher should see to it, *that apparently such a case of necessity exists*, are as ancient and well established as the authority itself."

So in case of Milward v. Hallett, 2 Cranch. 77, the same court held, that if the master, in the course of the voyage, is compelled to pay duties in order to obtain a clearance of the cargo, or freight, he may bind the ship owner to the payment:

These cases rest upon the principle of necessity, but in the absence of such necessity the law is otherwise. When the owner is himself present, or within easy access, that agency of the master, which is founded on necessity, disappears, for the necessity has ceased to exist. (1 Parsnos on Mar. Law, 380.)

Thus it is held that a master of a vessel has no right, merely as master, to procure insurance for the owners, nor can one tenant in common of a vessel, merely in virtue of such relation, cause insurance to be made on property on board for his co-tenant. (Foster et al. v. United States Ins. Co., 11 Pick. 85; Bell v. Humphreys, 2 Stark. 345.)

In Jordan v. Young, 37 Maine, 276, the Supreme Court of Maine went so far as to hold that the master in a home port could not order repairs to be made. The judge, in delivering the opinion, said:

" The master of the vessel can do all things necessary for the prosecution of the voyage. But this authority does not usually extend to cases where the owner can personally

intefere, as in the home port.  If the vessel be at a home
port, but at a distance from the owner's residence, and pro-
visions or other things required to be provided promptly,
then the occasion authorizes the master to pledge the credit
of the owner.  There is nothing in the present case to indi-
cate an exigency so pressing as to preclude an application to
the owner before the repairs were made, and the master,
merely as such, could not make the owner liable for them."

In the navigation of our western rivers the strict rules of
maritime law have never been so rigidly enforced.  Here it
is admitted that the master, in his capacity of agent, may,
even in the home port and where the owner resides, employ
persons to serve on the boat, and may contract for stores and
supplies ; and, to give still greater security to this class of
claims, the legislature have provided that they shall consti-
tute a lien upon the boat itself.

But the master has no power to execute a note in the
name of the owner payable to the pilot for wages due him,
the authority for such purpose not being implied from the
relation that subsists between master and owner.  (Grigg v.
Robbins, 28 Mo. 347.)

We have been particular in noting the distinction between
contracts of the master made in a foreign port and those in
a home port, for the reason that it has a special application
to the case under consideration.  Here the boat was seized
in the port of St. Louis, her home port, and the place of de-
fendant's residence.  No necessity existed for any particular
action on the part of the master.  The owners were on the
ground, and could have given the statutory bond if they de-
sired her discharge, or, if the master thought proper to exe-
cute the bond in his own name, he could have called upon
the owners to furnish the security.  It is true that our stat-
ute provides that the boat shall be discharged if the captain,
owner, agent or consignee shall give the bond required; but
it is not a duty imposed on either, and it does not necessarily
follow that if the captain or consignee shall volunteer a bond,
the person who shall, at the request and by the procurement

of such captain or consignee, execute the same as security, shall have a cause of action against the owner to reimburse him for any loss he may sustain thereby.

To create such a liability there must be some privity between them, either in fact or in law. There should be evidence to show that the security executed the bond through the instrumentality of the owners, or that the owners subsequently ratified or acquiesced in the same. The record furnishes no such evidence in this case. It does not even appear that the plaintiff knew the owners, or had any knowledge of their responsibility. He evidently executed the bond at the instance and upon the faith and sole credit of the master. If the relation of debtor and creditor was created between the parties, then it must be upon the idea that the master procured the security as agent of the defendants; but no such agency was shown, and we do not think it can be implied from the relation existing between them. The case of Tom v. Goodrich et al., reported in 2 Johnson, 213, maintains the view we take in this case with respect to privity. One of five partners executed bonds to the United States for duties on goods imported on account of their firm and as their property. Tom became security in the bonds and paid them, the co-partner who executed the bonds having died. Tom brought suit against the surviving partners to recover the amount so paid, and it was held that he was not entitled to recover, there being no privity between the parties but what arises from the bond.

Kent, Ch. J., remarked, " It would be refining upon the doctrine of implied assumpsits, and going beyond every case, to consider the surety in a bond as having by that act a remedy at law against other persons for whom the principal in the bond may have acted as trustee." This authority is directly in point. No question could be raised as to the authority of the partner to give the bonds, and it is evident that they were executed in satisfaction of a debt due from the firm for duties on property belonging to the firm, and the surviving partners received and enjoyed an immediate

benefit from the transaction. If, therefore, no such privity existed between Tom and the surviving partners as to create a legal liability, we do not see upon what principle it can be contended that such privity exists between the parties to this suit. We think it cannot be founded upon any well-settled principle of law.

The judgment will be reversed and the cause remanded; Judge Dryden concurring, Judge Bates dissenting.